**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| 3M COMPANY | : | |
| 3M Center | : | |
| St. Paul, MN 55144-1000, | : | Case No.: _____ |
| | : | |
| Plaintiff, | : | Judge _____ |
| | : | |
| v. | : | Magistrate Judge _____ |
| | : | |
| CENTRAL INFUSION ALLIANCE, INC. | : | **Jury Demand Endorsed Herein** |
| D/B/A as CIA MEDICAL or | : | |
| MLS TRADING | : | |
| c/o Incorp Services, Inc. | : | |
| 901 S. 2nd Street, Suite 201 | : | |
| Springfield, IL 62704 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff 3M Company ("3M"), by and through its undersigned attorneys, and for its Complaint against Defendant Central Infusion Alliance, Inc., also doing business as CIA Medical and MLS Trading ("Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for trademark counterfeiting, trademark infringement, unfair competition, and other Lanham Act violations—false endorsement and false designation of origin—arising from Defendant's ongoing misconduct and use of 3M's name and famous "3M" trademarks to perpetrate false and deceptive offers for sale and sales of counterfeit personal protective equipment ("PPE") to unwitting customers during the COVID-19 pandemic—without authorization and for inappropriate commercial benefit.

2. Specifically, this lawsuit concerns Defendant's offer for sale and sale of counterfeit N95 respirator products falsely bearing 3M trademarks. These counterfeit products are not

1

manufactured or authorized by 3M and falsely claim to be 3M-brand National Institute for Occupational Safety and Health (NIOSH) approved N95 Particulate Filtering Facepiece Respirators. Accordingly, Defendant's sale of these counterfeit respirators is jeopardizing the health and safety of unsuspecting first responders, healthcare workers, and innocent customers who believe they are purchasing 3M-brand respirator products that have been approved by NIOSH as meeting the N95 standard. As a result, this unlawful activity is causing 3M and the public at large irreparable harm.

3. For decades, 3M has been providing state-of-art, industry-leading safety and medical products to customers around the world under its famous "3M Marks." Based on this longstanding, continuous use, customers associate the 3M Marks uniquely with 3M. Now, more than ever, customers are also relying on the famous 3M marks to indicate that the products offered thereunder are of the same superior quality that customers have come to expect from 3M. This is especially true with respect to 3M's numerous industry-leading healthcare products and PPE, including 3M-brand N95 respirators.

4. Unfortunately, a number of wrongdoers are seeking to exploit the current public health emergency and prey on innocent parties through a variety of scams involving 3M N95 respirators and other products in high demand. These scams include unlawful price-gouging, fake offers, counterfeiting, and other unfair and deceptive practices—all of which undercut the integrity of the marketplace and constitute an ongoing threat to public health and safety.

5. 3M is taking an active role in combating the fraudulent activity, price-gouging, and counterfeiting related to N95 respirator products that has spiked in the marketplace in response to the pandemic. 3M is working with law enforcement authorities around the world, including the U.S. Department of Justice, the Federal Bureau of Investigation, the Department of Homeland

Security, and federal and state Attorneys General, to combat the sale of counterfeit goods, price-gouging and other unlawful activities.

6.      Defendant has orchestrated a fraudulent scheme that features: (i) infringement, dilution, and misuse of 3M's valuable trademarks; (ii) various false and deceptive assertions; (iii) attempted price-gouging of 3M-brand PPE products; and (iv) offers for sale and sales of counterfeit 3M PPE products to customers.

7.      Defendant is trading on 3M's name, branding, intellectual property, products, reputation for quality, and substantial goodwill after decades of 3M's investment to bring high quality 3M-brand respirator products to users around the world.

8.      This conduct—selling counterfeit goods, infringing and diluting 3M's trademarks, and engaging in unfair competition—violates the Lanham Act.

9.      Defendant's conduct also violates the State of Illinois' laws against trademark infringement, false advertising, and deceptive trade practices, as well as the common law against passing off counterfeit respirator products bearing 3M trademarks as being affiliated or associated with 3M.

10.     3M requests that the Court preliminarily and permanently enjoin Defendant from using 3M's name, logo, branding, all associated trademarks and other intellectual property, and from selling counterfeit 3M-brand respirator products bearing 3M trademarks or any other 3M products.

11.     Finally, 3M further requests the Court order Defendant to disgorge any profits that Defendant has made from these sham transactions.  3M will donate any disgorged profits recovered in this action to COVID-19 related charitable organizations.

**THE PARTIES**

12.     Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144.  3M is a diversified technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including PPE such as 3M-brand N95 respirator products.

13.     Defendant Central Infusion Alliance, Inc. is an Illinois corporation with a principal place of business located at 7542 St. Louis Ave., Skokie, Illinois 60076-4034.

14.     According to Defendant's website, https://www.ciamedical.com/about-us (the "Website"), "Central Infusion Alliance (CIA Medical) is a wholesale distributor to professional healthcare facilities, serving over 25,000 customers worldwide" and "offering a wide range of medical supplies, surgical equipment, personal protective equipment (PPE), patient care products and laboratory supplies."  Defendant claims to offer "healthcare purchasers competitive prices, fast shipping, and top-notch service."  However, Defendant does not only sell to healthcare purchasers, but also to individual consumers.  Further, Defendant does not list its allegedly competitive prices on its website for the vast majority of alleged 3M respirator masks that it is selling to the public.  Instead, potential purchasers are directed to "Call for Pricing."



(https://www.ciamedical.com/1860s-mask-respirator-n95-niosh-approved-sm-120-ea-cs-6-bx-cs)

## JURISDICTION AND VENUE

15.     The claims for trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts 1 - 5 , infra, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 et seq.  Accordingly, this Court has original and subject-matter jurisdiction over Counts 1- 5 pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C § 1121(a).

16.     The claims for deceptive acts and practices, false advertising, trademark infringement asserted in Counts 6 - 8, *infra*, arise under Illinois statutory and common law, and are so related to the federal claims asserted in Counts 1 - 5, infra, that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Counts 6 - 8 pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

17.     Defendant has purposefully availed itself of the privilege of transacting business in this District.  Defendant has also committed and intentionally directed tortious acts towards purchasers while in this District.  Defendant's principal place of business is in Skokie, Illinois.

18.     A substantial part of the events giving rise to the claims asserted, infra, occurred in this District.  Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

19.     Defendant is subject to personal jurisdiction in this District.  Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.     3M

20.     3M has grown from a small-scale mining venture in Northern Minnesota in 1902 to what it is today, namely: an industry-leading provider of scientific, technical, and marketing

innovations throughout the world. Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and safety equipment. 3M actively safeguards and protects its intellectual property. This includes maintaining substantial numbers of federal trademark registrations.

### A. The 3M Brand

21.     The 3M brand is associated with products for a wide range of medical supplies, devices, and safety products, including the 3M-brand N95 respirator products. As a result, 3M-brand products are highly visible throughout doctors' offices, hospitals, and other medical facilities where patients and medical professionals rely upon the quality and effectiveness of products associated with the 3M brand.

### B. The Famous "3M" Marks

22.     Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to customers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the 3M logo shown below (together, the "3M Marks"):



23.     For decades, products offered under the 3M Marks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators). In 2020 alone, 3M's sales have been in the billions of dollars, much of which included products sold utilizing the 3M Marks.

24.     Over the same time period products offered under the 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

25.     Based on the foregoing, customers associate the 3M Marks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Marks.  Based on the foregoing, the 3M Marks have also become famous among customers throughout the United States.

26.     To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration"). (*See* Exhibits A - C, attached hereto.)

27.     Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register of the United States Patent and Trademark Office ("USPTO").

28.     Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065.  Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) 3M's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

29.     3M's famous 3M Marks do more than identify 3M as the exclusive source of goods and services offered thereunder. The famous 3M Marks also signify to customers that 3M-brand products offered under the 3M Marks are of high quality and adhere to strict quality-control standards. Now, more than ever, customers rely on the famous 3M Marks' ability to signify that

products offered under the 3M Marks are of the same high quality that customers have come to expect of the 3M brand over the past century.

**C. 3M's Extensive Efforts to Combat the COVID-19 Pandemic**

30.     Healthcare professionals and other first responders are heroically placing their health and safety on the line to battle COVID-19.  To assist in the battle, 3M has been working around the clock to supply healthcare workers, first responders, and critical infrastructure operators with millions of 3M-brand respirators.  Beginning in January 2020, 3M began increasing its production of 3M-brand respirators, increasing its annual respirator production capacity to 2 billion globally by the end of 2020.  3M's N95 respirator products are critical to those individuals and groups on the front lines combating COVID-19.

31.     The demand for 3M-brand respirators has grown exponentially in response to the pandemic, and 3M has committed to meet this demand while keeping its respirators priced fairly. 3M is working with customers, authorized distributors, governments, and medical officials to direct 3M supplies to where they are needed most.

32.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19.  As 3M states on the homepage of its website, 3M is committed to getting personal protective equipment to healthcare workers and first responders:



33.     Legitimate 3M-brand N95 respirator products help reduce exposure to potentially harmful airborne particles and contamination when worn and used appropriately.

34.     However, as demand has skyrocketed for PPE, and in particular 3M-brand N95 respirator products, in the midst of the pandemic, bad actors have sought to exploit the situation.

35.     To help protect the public and healthcare professionals—on the front lines of the COVID-19 pandemic—from counterfeiting, misleading and substantially inferior PPE products, as well as to protect 3M's goodwill and reputation in its 3M brand, 3M is working diligently with law enforcement authorities, online e-commerce retailers, and others to combat unethical and unlawful business practices related to 3M-brand N95 respirator products.  3M's efforts are featured at 3m.com/covidfraud.

36.     Examples of 3M's efforts to combat trademark counterfeiting, trademark infringement, and other unlawful activities during the COVID-19 pandemic include:

        a.      3M posted on its website the U.S. per respirator, single case list price for the most common models of its 3M-brand N95 respirator products so that the public can identify and avoid inflated pricing.  *See* https://multimedia.3m.com/mws/media/1862179O/get-the-facts-n95-respirator-pricing.pdf:

### U.S. List Prices for Common N95 Respirator Models

These list prices are per respirator.

These list prices represent suggested prices to end customers. 3M's prices to its authorized distributors are lower than these list prices.

An end customer's actual prices may be lower than these list prices, as negotiated between the end customer and its chosen distributor.

List prices for these models sold in Canada are similar on a currency-adjusted basis.

| Model | Type | List Price (USD) |
|---|---|---|
| 1804 | Surgical | $0.76 |
| 1804S | Surgical | $0.76 |
| 1860 | Surgical | $1.42 |
| 1860S | Surgical | $1.42 |
| 1870+ | Surgical | $1.78 |
| 8210 | Standard | $1.14 - $1.47 |
| 8210Plus | Standard | $1.32 - $1.68 |
| 8210V | Standard | $1.66 - $2.11 |
| 8110S | Standard | $1.21 - $1.53 |
| 8200 | Standard | $0.71 - $0.90 |
| 8511 | Standard | $2.74 - $3.48 |
| 9105 | Standard | $0.72 - $0.91 |
| 9105S | Standard | $0.72 - $0.91 |
| 9205+ | Standard | $1.28 - $1.60 |
| 9210+ | Standard | $1.40 - $1.78 |
| 9211+ | Standard | $2.68 - $3.40 |

b.      3M created a form on its website as well as a telephone hotline that the public can use to report suspected fraud.  Additionally, 3M has created online resources to help spot incidents of price-gouging, identify counterfeiting, and ensure products are from 3M authorized distributors.



c.      The 3M website further allows the public and interested parties to track 3M's enforcement activities against fraudulent activity in connection with 3M products, such as respirator products, during the COVID-19 pandemic. *See* https://www.3m.com/3M/en_US/worker-health-safety-us/covid19/covid-fraud/



d.      To date, 3M has fielded and investigated more than 16,100 fraud reports globally, filed 40 lawsuits, and has been granted 21 temporary restraining orders and 16 preliminary injunctions.  Additionally, over 25,7 00 false or deceptive social media posts, more

than 28,000 fraudulent e-commerce offerings and at least 400 deceptive domain names have been

removed. *See* https://www.3m.com/3M/en_US/worker-health-safety-us/covid19/covid-fraud/:



## II.  Defendant's Unlawful Conduct

37.  Even though 3M has been combatting counterfeiting and other unlawful activities

seeking to exploit the demand for 3M-brand N95 respirator products during the pandemic, bad

actors continue to take advantage of the public and unsuspecting users of respirator products.

Defendant is engaged in such misconduct, which risks public health, impairs the supply chain

supporting healthcare workers and others fighting the pandemic, and damages 3M's brand and

goodwill.

38.  Defendant's sales and offers to sell counterfeit products, and their

misrepresentations and infringement of the 3M Marks, are damaging to the public and to 3M.  3M

has gone to great lengths to make it known that the best way to avoid counterfeit products is to

purchase 3M respirators only from 3M's network of authorized distributors. *See, e.g.,*

https://multimedia.3m.com/mws/media/1860221O/covid-n95-selling-facts.pdf. Upon information

and belief, Defendant knew this, was put on notice by purchasers of their products, and yet

continued to offer counterfeit products for sale.  And not only has Defendant been selling

counterfeit products, but they have been doing so at exorbitant prices.  Reports received by 3M

indicate that at various points during the Pandemic, Defendant was offering boxes of 20 alleged 3M 1860 respirators for prices averaging $250.00 per box, or anywhere between $12 to $13 per respirator, when 3M's average U.S. single-case list price for the same style of respirator is approximately $1.42 .

39.     In furtherance of the scheme summarized above, Defendant used proprietary pictures of 3M's respirators on its Website in an effort to misrepresent a relationship with 3M and purport to be an authorized distributor of 3M products.



*See* https://www.ciamedical.com/search/3M%20kn90

40.     An entire page on the Website was devoted to Defendant's purported affiliation with 3M, and sale of alleged "3M face masks."



(*See* https://www.ciamedical.com/3m?limit=25&page=11)

-12-

41. In promotional videos on YouTube, Defendant portrays a false affiliation with 3M, and purports to be an authorized "wholesale distributor" of 3M brand products. (*See* https://www.youtube.com/watch?v=mFrL8jf8W0U)



(*Id.*)



(*Id.*)



(*Id.*)

42.     Defendant undertook these actions for the express purpose of selling 3M-brand respirators that it knew or should have known were counterfeit.

43.     Beginning in April 2020, Defendant began price gouging consumers, quoting and selling 3M-brand respirators at exorbitant prices.  (*See* Exhibit D, attached hereto.)  This price gouging continued into the early part of January 2021 based on reports from purchasers to 3M's COVID-19 Fraud hotline.

44.     Upon information and belief, Defendant knowingly, or with reckless disregard for their authenticity, sold counterfeit 3M-brand respirators to healthcare providers and the general public.  Defendant has also engaged in price-gouging.  Defendant, through the Website and via their sales agents, has offered to sell thousands of 3M-brand N95 respirators at grossly inflated prices – for example, $252.00 for 20 respirators – which is approximately 1000% above 3M's actual list price.

45.     Following multiple reports of Defendant's sale of 3M brand respirators at price-gouging levels, 3M began receiving reports of the sale of suspected counterfeit respirators to healthcare professionals and the general public.

46.     For example, on January 29, 2021, a healthcare professional reported a suspicion of counterfeit product to 3M's COVID-19 Fraud Hotline.  The healthcare professional was given the purported 3M-brand respirators at a hospital at which he works.  The masks were sold to the hospital by Defendant.  Based on identified concerns and upon inspection of photographs of the products and packaging included in the hotline report, 3M personnel determined that some the products Defendant sold to the purchaser were counterfeit masks purporting to be 3M N95 respirators.  (*See* Exhibit E, attached hereto.)

47.     As another example, on February 19, 2021, an individual purchaser of Defendant's purported 3M PPE reported a purchase to 3M's COVID-19 Fraud Hotline upon suspicion of counterfeit products.  This purchaser bought what she believed to be 3M N95 respirators at exorbitant prices – $180 and $227 per box.  Based on identified concerns and upon inspection of photographs of the products and packaging included in the hotline report, 3M personnel determined that the products Defendant sold to the individual purchaser were counterfeit masks purporting to be 3M N95 respirators.  (*See* Exhibit F, attached hereto.)

48.     Likewise, on March 26, 2021, an individual purchaser of Defendant's purported 3M PPE reported a purchase to 3M's COVID-19 Fraud Hotline upon suspicion of counterfeit products.  This purchaser bought what she believed to be 3M N95 respirators.  Based on identified concerns and upon inspection of photographs of the products and packaging included in the hotline report, 3M personnel determined that the products Defendant sold to the individual purchaser were counterfeit masks purporting to be 3M N95 respirators.  (*See* Exhibit G, attached hereto.)

49.     Again on April 27, 2021 an individual purchaser of Defendant's purported 3M PPE reported a purchase to 3M's COVID-19 Fraud Hotline upon suspicion of counterfeit products. This purchaser bought what she believed to be 3M N95 respirators.  Based on identified concerns and upon inspection of photographs of the products and packaging included in the hotline report, 3M personnel determined that the products Defendant sold to the individual purchaser were counterfeit masks purporting to be 3M N95 respirators.  (*See* Exhibit H, attached hereto.)

50.     On September 20, 2021, a representative of University of Louisville Health ("U of L Health") contacted the 3M Fraud Hotline via email. U of L Health had made two purchases of purported 3M-brand N95 1860 and 1860S respirators from Allied Tools on August 19, 2021 and September 7, 2021 and wanted to know whether the respirators provided by Defendant were authentic. The purchases totaled more than $450,000 for 1,600 cases of purported 3M-brand N95 respirators. Copies of the invoices for the August 19, 2021 and September 7, 2021 purchases are attached hereto as Exhibits I and J.  The masks were sold to U of L Health by Allied Tools, purported consignee of Defendant according to shipping records forwarded to U of L Health on August 31, 2021.  (*See* Exhibit K, attached hereto.)

51.     U of L Health provided 3M with detailed photos of the respirators that Defendant had sold to U of L Health, to allow 3M to assess their authenticity. These photos, sampled below, clearly show the 3M Marks used on both the respirators themselves as well as the respirator packaging.

52.     After reviewing the photos provided by U of L Health, 3M confirmed that both the 1860 and 1860S respirators sold by Defendant were indeed counterfeit.  (*See* Exhibit L, attached hereto.)  This conclusion was based on an assessment of the printing on the respirators, the packaging for the respirators, the Lot Codes, and the construction of the respirators themselves,

-16-

which revealed multiple inconsistencies with authentic 3M N95 respirators. Furthermore, the two Lot Codes listed on these counterfeit masks— B20020 and B20679—have long been used by counterfeiters manufacturing fake 3M-brand N95 masks. 3M has included B20020 on its list of known counterfeit lot codes since December 2020, and B20679 on its list of known counterfeit lot codes since February 2021. A copy of 3M's December 18, 2020 and February 11, 2021 public counterfeit notices, which list Lot Codes B20020 and B20679, are attached hereto as Exhibits L and M.

53.     On October 18, 2021, 3M filed suit against Allied Tools in the United States District Court for the Western District of Kentucky for trademark counterfeiting.  The case is pending as Case No. 3:21-cv-00642.

54.     Upon information and belief, following the filings of the lawsuit against Allied Tools and as of the filing of this Complaint, Defendant continues its unauthorized and illegal marketing and sale of counterfeit 3M-brand respirator products bearing 3M trademarks.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

*(Trademark Counterfeiting - 15 U.S.C. §§ 1114(1), 1116(a))*

55.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1- 54 of the Complaint as though set forth fully herein.

56.     Count I is a claim for trademark counterfeiting under U.S.C. §§ 1114(1), 1116(a).

57.     Defendant is using spurious designations that are identical to the 3M Marks.

58.     Defendant has been using these spurious designations identical to 3M Marks for the purpose of advertising, promoting, offering for sale, and selling counterfeit 3M-brand respirator products.

59.     Defendant has used these spurious designations identical to 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand respirator products including, for example, providing purchasers with information for the products that Defendant is attempting to pass off as 3M-brand N95 respirators.

60.     Defendant's use of the spurious designations identical to 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, and/or deception about whether Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from, 3M.

61.     Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of the 3M Marks that are now incontestable, Defendant had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendant began using spurious designations identical to 3M Marks as part of their efforts to deceive customers and the general public.

62.     Upon information and belief, Defendant adopted and used the 3M Marks in furtherance of Defendant's willful and deliberate scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand respirator products.

63.     Upon information and belief, Defendant has made, and may continue to make, ill-gotten profits and gain from their unauthorized use of the 3M Marks, to which Defendant is not entitled at law or in equity.

64.     Defendant's acts and conduct complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1) and 1116(a)).

65.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendant is advertising and offering for sale non-3M brand respirator products during a global pandemic when these products are playing a critical role in helping to protect public health.

66.     The acts of Defendant described herein have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

67.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 related relief efforts.

68.     3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*
*(Infringement of the Federally Registered 3M Marks)*

69.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 68 of the Complaint as though set forth fully herein.

70.     3M is the exclusive owner of each of the federally registered 3M Marks.

71.     3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling 3M-brand N95 respirators.

72.     3M's exclusive rights in and to each of the 3M Marks predate any rights that Defendant could establish in and to any mark that consists of "3M" in whole and/or in part.

73.     Each of the 3M Marks are fanciful and/or arbitrary when used for respirators and, therefore, are inherently distinctive.

74.     Each of the 3M Marks identify 3M as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

75.     Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators.

76.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged herein, is causing, and is likely to continue to cause, customer confusion, mistake, and/or deception about whether Defendant is a licensee, authorized distributor, and/or affiliate of 3M and/or has authority to sell products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

77.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue cause, customer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

78.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged herein, is causing, and is likely to continue to cause, customer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from 3M.

79.     3M has not consented to the use of its famous 3M Marks by Defendant.

80. Defendant had both actual and constructive knowledge of 3M's superior rights in its 3M Marks due to 3M's decades-long, continuous use of its 3M Marks in United States commerce, and 3M's federal registration of the 3M Marks.

81. Defendant made use of the 3M Marks in furtherance of Defendant's willful scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including 3M-brand respirator products.

82. On information and belief, Defendant profited from their infringement of the 3M Marks.

83. Defendant's acts and conduct described herein constitute trademark infringement in violation of 15 U.S.C. § 1114 (1)(a).

84. 3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court. The damage suffered by 3M is worsened due to Defendant's taking advantage of an unsuspecting public and medical health professionals during a global pandemic—when 3M's respirator products are critical to those frontline workers battling the COVID-19 pandemic. Defendant's misconduct directly creates a likelihood of confusion about 3M's role in the marketplace for respirator products.

85. 3M has been damaged by Defendant's misconduct in an amount to be proven at trial and donated to charitable COVID-19 related relief efforts.

86. 3M requests the relief set forth in the Prayer for Relief below.

### THIRD CLAIM FOR RELIEF

*(Unfair Competition, False Endorsement, and False Designation of Origin
Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))
(Use of the 3M Marks)*

87.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-86 as though set forth fully herein.

88.     Count III is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

89.     On information and belief, Defendant's misconduct described herein constitutes unfair competition, false endorsement, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

90.     On information and belief, Defendant's use of 3M's famous name and 3M Marks to advertise, market, offer for sale, and/or sell purported 3M-brand respirator products to customers, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

91.     Defendant also falsely represented itself as connected to and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, 3M-brand respirator products. Defendant sought to create the false impression that the products it purported to offer to healthcare and individual third party purchasers and others originate from, and/or are sponsored or approved by, and/or offered with authorization from 3M.

92.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.

93.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 related relief efforts.

94.     3M requests the relief set forth in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF

*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*
*(Dilution of the Famous 3M Marks)*

95.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-94 of the Complaint as though set forth fully herein.

96.     Count IV is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

97.     The 3M Marks are famous.  The 3M Marks were famous before, during, and after the time Defendant began using the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including 3M-brand respirator products).

98.     Defendant's use of 3M's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-brand respirator products) dilutes the distinctive quality of the famous 3M Marks, such that the famous 3M brand name and 3M Marks' established value and selling power will likely be diminished.

99.     Defendant's use of 3M's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including, without limitation, 3M-brand respirator products) dilutes the distinctive quality of the famous 3M name and 3M Marks, such that the famous 3M Marks' ability to identify 3M as the exclusive source of products offered under the 3M Marks (including 3M-brand respirator products) will be diminished.

100.    Defendant's use of 3M's famous 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-brand respirator products), in general, and during a global pandemic such as

COVID-19 specifically, dilutes the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such marks (including 3M-brand respirator products), will be diminished.

101.     Defendant's misconduct also threatens to harm the reputation of the 3M Marks, constituting dilution by tarnishment of the famous 3M Marks.

102.     Defendant's acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

103.     3M has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating their illegal scheme and misrepresenting 3M-brand respirator products during a global pandemic when those products are in great demand to help protect public health.

104.     3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 related relief efforts.

105.     3M requests the relief set forth in the Prayer for Relief below.

### FIFTH CLAIM FOR RELIEF

*(False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))*
*(Defendant's Website and YouTube Advertisement)*

106.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-105 of the Complaint as though set forth fully herein.

107.     Count V is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

108.     Through their externally facing Website and YouTube advertisement, Defendant made statements to the general public—and medical health professionals—that contained false,

misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of the products that Defendant allegedly have available for sale and constitute commercial advertising and/or commercial promotion.

109.    Defendant's acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

110.    3M has suffered, and will continue to suffer, irreparable harm from Defendant's misconduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendant is opportunistically operating their illegal scheme and misrepresentations about 3M-brand respirator products during a global pandemic when those products are in great demand to help protect the public health.

111.    3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 related relief efforts.

112.     3M requests the relief set forth in the Prayer for Relief below.

**SIXTH CLAIM FOR RELIEF**

*(Trademark Infringement Under Illinois Common Law)*
*(Infringement of Registered 3M Marks)*

113.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 - 112of the Complaint as though set forth fully herein, including but not limited to the allegations in 3M's Second Claim for Relief.

114.    3M is the exclusive owner of each of registered 3M Marks.

115.    3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling 3M-brand N95 respirators.

116.    Defendant is using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-brand N95 respirators.

117.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, customer confusion, mistake, and/or deception about whether Defendant is licensees, authorized distributors, and/or affiliates of 3M products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

118.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue cause, customer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

119.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, mistake, and/or deception about whether Defendant and/or Defendant's products originate with, and/or are sponsored or approved by, and/or offered with authorization from 3M or vice versa.

120.     3M has not consented to the use of its famous 3M Marks by Defendant.

121.     Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the registration of the 3M Marks, Defendant had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendant began using the 3M Marks.

122.     Defendant adopted and used the 3M Marks in furtherance of Defendant's willful, deliberate, and bad-faith scheme of trading upon the extensive customer goodwill, reputation,

fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

123.    Defendant has made, and will continue to make, substantial profits and gain from their unauthorized use of the 3M Marks, to which Defendant is not entitled at law or in equity.

124.    Defendant's acts and conduct complained of herein constitute trademark infringement in violation of Illinois common law.

125.    3M has suffered, and will continue to suffer, damages and irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  Such conduct risks public criticism of the manner in which 3M's respirators are being distributed and sold during the COVID-19 pandemic and significant confusion about 3M's role in the marketplace for products that help protect public health workers.

126.    3M has been damaged by the acts of Defendant in an amount to be proved at trial and donated to charitable COVID-19 related relief efforts.

## SEVENTH CLAIM FOR RELIEF

*(Trademark Dilution under Illinois Common Law and the*
*Illinois Trademark Registration and Protection Act)*

127.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 126 of the Complaint as though set forth fully herein, including but not limited to its Fourth Claim for Relief.

128.    The foregoing acts of Defendant constitute trademark dilution in violation of Illinois common law and the Illinois Trademark Registration and Protection act (765 ILCS 1036/65).

129.    The 3M Marks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread recognition.

130.    Through prominent, long and continuous use in commerce, including commerce in the State of Illinois, the 3M Marks have become and continue to be famous and distinctive.

131.    Defendant's offers for sale and sale of counterfeit products is diluting the distinctive quality of the 3M Marks and decreasing the capacity of such marks to identify and distinguish genuine 3M products and has caused a likelihood of harm to 3M's business reputation.

132.    Defendant has diluted the distinctive quality of the famous 3M Marks.

133.    Upon information and belief, Defendant has and will continue to make substantial profits and/or gains to which it is not entitled to in law or equity.

134.    Upon information and belief, Defendant intends to continue its infringing acts unless restrained by the Court.

135.    3M is entitled to injunctive relief and monetary damages pursuant to Illinois law, and 3M will donate all monetary damages to charitable COVID-19 related relief efforts.

**EIGHTH CLAIM FOR RELIEF**

*(Unfair Competition under the Illinois Consumer Fraud and Deceptive Business Practices Act)*

136.    3M repeats and incorporates by reference the statements and allegations in paragraphs 1 – 130 of the Complaint as though set forth fully herein, including but not limited to its Third Claim for Relief.

137.    As alleged herein, Defendant has engaged in and continues to engage in unfair competition in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505 *et seq*.).

138.     Defendant's use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing unfair competition in the PPE market.

139.     Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.  3M is entitled to injunctive relief and monetary damages, and 3M will donate all monetary damages to charitable COVID-19 related relief efforts.

## PRAYER FOR RELIEF

**WHEREFORE**, based on Defendant's conduct complained of, herein, 3M asks that this Court:

A.     To enter an Order, finding in 3M's favor on each Claim for Relief asserted herein;

B.     Pursuant to 15 U.S.C. § 1116(a), Illinois statutory law, and Illinois common law:

1.     Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with it from using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 respirators;

2.     Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons and entities in active concert and participation with it from falsely representing itself as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M's products (including, without limitation, 3M's 3M-brand N95 respirator) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and

3.      Ordering Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

C.      Pursuant to 15 U.S.C. § 1117:

1.      Order Defendant to provide 3M with a full accounting of all manufacture, importation, purchase, distribution and sale of products under the 3M Marks (including, without limitation, 3M-brand N95 respirators), as well as all profits derived therefrom;

2.      Order Defendant to pay to 3M—so as to be donated charitably pursuant to subpart I, infra—all of Defendant's profits derived from the sale of infringing and counterfeit goods offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators);

3.      Award 3M treble actual damages in connection with Defendant's infringement and counterfeiting of the 3M Marks, with all such damages to be donated by 3M to charitable COVID-19 related relief efforts;

4.      Find that Defendant's acts and conduct complained of herein render this case "exceptional"; and

5.      Award 3M its costs and reasonable attorneys' fees incurred in this matter, with such award to be donated by 3M to charitable COVID-19 related relief efforts;

D.      Pursuant to 15 U.S.C. § 1118, order the destruction of all unauthorized goods and materials within the possession, custody, and control of Defendant and Defendant's agents that bear, feature, and/or contain any copy or colorable imitation of the 3M Marks;

E.      Award 3M pre-judgment and post-judgment interest against Defendant;

F.     For any preliminary and permanent injunctive relief, that such relief extend to Defendant's agents, servants, employees, officers, and all persons and entities in active concert and participation with Defendant;

G.     To order Defendant to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction; and

H.     Award 3M such other relief that the Court deems just and equitable.

Respectfully submitted,

/s/ Courtney A. Nichol
Courtney A. Nichol (ARDC No. 6324415)
GORDON REES SCULLY MANSUKHANI LLP
One North Franklin, Suite 800
Chicago, Illinois 60606
(T)     312-980-6783
(F)     312-565-6511
(E)     cnichol@grsm.com


/s/ Richard D. Schuster
Richard D. Schuster (0022813)
(*to be admitted pro hac*)
Kara M. Mundy (0091146)
(*to be admitted pro hac*)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
(T)     614-464-5669
(F)     614-719-4709
(E)     rdschuster@vorys.com
        kmmundy@vorys.com

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Courtney Nichol (ARDC No. 6324415)
GORDON REES SCULLY MANSUKHANI LLP
One North Franklin, Suite 800
Chicago, Illinois 60606
(T)    312-980-6783
(F)    312-565-6511
(E)    cnichol@grsm.com